UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALGENIS MENDEZ-QUINONES,

v.                            Case No. 8:19-cr-20-VMC-AEP
                                     8:20-cv-3034-VMC-AEP

UNITED STATES OF AMERICA.

_____/

**ORDER**

This matter is before the Court on Algenis Mendez-Quinones' pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 150), which was filed on December 10, 2020. The United States of America responded on February 24, 2021. (Civ. Doc. # 6). Mendez-Quinones failed to file a reply by the deadline.

Mendez-Quinones instead filed a pro se Motion for Summary Judgment (Civ. Doc. # 7) on March 5, 2021. The United States has responded (Civ. Doc. # 9), and Mendez-Quinones has replied. (Civ. Doc. # 12).

For the reasons that follow, both Motions are denied.

I. **Background**

On January 16, 2019, a federal grand jury in Tampa returned an indictment against Mendez-Quinones and Jeremy Johnson. (Crim. Doc. # 10). Mendez-Quinones was charged in

1

Count One with conspiring to distribute 500 grams or more of cocaine and, in Count Six, with attempting to distribute and possess with intent to distribute 500 grams or more of cocaine. (Id.). On September 12, 2019, Mendez-Quinones entered a guilty plea to Counts One and Six. (Crim. Doc. ## 91, 95, 96).

During the change of plea hearing, Mendez-Quinones was placed under oath and acknowledged that he read and understood the charges against him. (Crim. Doc. # 133 at 5-6). Mendez-Quinones stated that he was fully satisfied with his counsel Mr. Camareno's advice and representation. (Id. at 11-12). The Court summarized the charges against him, and Mendez-Quinones acknowledged understanding them. (Id. at 9-10). Mendez-Quinones acknowledged that he had a full and fair opportunity to review all the facts and evidence against him to discuss everything with his attorney, including his right to go to trial. (Id. at 10). The Court explained the essential elements of both charges and the potential penalties, and Mendez-Quinones acknowledged understanding them. (Id. at 19-20).

The government also set forth the following factual basis during the change of plea hearing:

> On December 3rd and 4th of 2018, an undercover officer purchased cocaine from Jeremy Johnson. The first of these deals occurred just outside Jeremy

Johnson's Tampa home, and the second deal was inside the home. In all, the UC purchased approximately 290 grams of cocaine for $9,500.

DEA executed a search warrant on Johnson's home on December 17, 2018. Inside they found approximately 1 kilogram of cocaine in Johnson's bedroom. They also found a Taurus pistol, which was with two magazines and 17 rounds of 9-millimeter ammunition, in the bathroom connected to the bedroom.

Post-Miranda, Johnson admitted to possessing the gun and the kilogram of cocaine. He explained his supplier, whom he knew as "Fat," had given him the kilogram of cocaine on credit. Fat was later identified as Algenis Mendez-Quinones. Johnson also explained that the cocaine that the UC had purchased came from Mendez-Quinones.

Johnson then placed a controlled recorded telephone call to Mendez-Quinones. He ask[ed] Mendez-Quinones if the cocaine he had just received was the same as the cocaine that Mendez-Quinones had given him before. Mendez-Quinones stated that it was always the same stuff, it was always Ace of Spades or Aces Wild, referencing the spade mark on the kilogram of cocaine in Johnson's home.

In a later call Johnson arranged to return the cocaine to Mendez-Quinones, explaining that the customer he had lined up for the sale would not be purchasing.

Mendez-Quinones and Johnson met at a Lowe's parking lot in Tampa. Johnson carried a sham brick of cocaine with him to the meeting, which was similar in size and weight to the cocaine that Johnson had received from Mendez-Quinones. Johnson got into Mendez-Quinones' car and the two discussed Mendez-Quinones' options for distributing the cocaine, and Johnson gave Mendez-Quinones the sham brick.

(Id. at 20-22).

Mendez-Quinones then stipulated to the majority of these facts. (Id. at 22-24). His counsel clarified that Mendez-Quinones had no firsthand knowledge of the two deals Johnson conducted with the undercover and that he did not know of the search warrant until after charges were brought against him. (Id. at 22-23). As to the third paragraph of the factual basis provided by the government, Mendez-Quinones' counsel stated:

> Paragraph 3, Judge, we have no dispute with that, with the exception of the last sentence of paragraph 3. At some point it will be made clear that when Mr. Johnson wanted cocaine and Mr. Quinones was not the actual distributor, Mr. Quinones-Mendez would facilitate it or place the order and then it would be delivered to some — some location at which time Mr. Johnson would retrieve it, but Mr. Algenis Mendez-Quinones was the one who would facilit[ate] that process, make the call to make sure the cocaine was delivered, it was never actually delivered firsthand or by hand by Mr. Mendez, but nonetheless he had full knowledge of what Mr. Johnson's intentions were and the quantity and so forth.

(Id. at 23).

Mendez-Quinones had no objection to the factual basis as to the recorded call between himself and Johnson. (Id.). His only other objection to the factual basis was that Mendez-Quinones did notice that the sham brick of cocaine "was not the same weight" as the original brick of cocaine, but that "nonetheless he did have an agreement with Mr. Johnson and he

4

facilitated and he did intend to retrieve it back at the time he was arrested." (Id. at 23-24).

The Court then asked Mendez-Quinones if he had "any other disagreement with the facts as stated by the prosecutor," to which Mendez-Quinones responded "No, sir." (Id. at 24). The Court then asked "And as you know them, are those facts true?," to which Mendez-Quinones responded "Yes, sir." (Id.).

On December 20, 2019, the Court sentenced Mendez-Quinones to two concurrent terms of 60 months' imprisonment. (Crim. Doc. ## 119, 120). Mendez-Quinones appealed, his attorney filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and the United States Court of Appeals for the Eleventh Circuit affirmed the defendant's judgement and sentence after an independent examination of the record. (Crim. Doc. # 142).

Now, Mendez-Quinones seeks post-conviction relief, claiming ineffective assistance of counsel. (Civ. Doc. # 1).

II. **Discussion**

In the sole ground of his Section 2255 Motion, Mendez-Quinones argues his counsel was ineffective because counsel "did not inform [Mendez-Quinones] on the defense of entrapment, prior to advising and assisting [him] into pleading guilty to 'knowing[ly] and intentionally' committing

5

this offense. Thereby, denying [him] the opportunity to make a knowing and intelligent choice on whether to plead guilty or proceed to trial to test the entrapment defense." (Id. at 4).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) her counsel's performance was deficient, and (2) the deficient performance prejudiced her defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish deficient performance, Mendez-Quinones must demonstrate by a preponderance of the evidence "that particular and identified acts or omissions of counsel 'were outside the wide range of professionally competent assistance.'" Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000)(citations omitted). In other words, Mendez-Quinones must show that "no competent counsel would have taken the action that [his] counsel did take." Id. at 1315. In deciding whether an attorney's performance was deficient, courts are "highly deferential" and "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal quotation marks omitted).

"[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." Brownlee v. Haley, 306 F.3d 1043, 1060 (11th Cir. 2002)(citation omitted). "The decision whether to present a line of defense, or even to investigate it, 'is a matter of strategy and is not ineffective unless the petitioner can prove that the chosen course, in itself, was unreasonable.'" Id. (citation omitted); see also Stephens v. United States, 14 F. Supp. 2d 1322, 1331 (N.D. Ga. 1998)("A decision not to investigate a potential defense, like other litigation decisions, need only be reasonable to fall within the range of professionally competent assistance." (citation omitted)).

To satisfy Strickland's second prong — prejudice — Mendez-Quinones must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "To establish prejudice in the context of a guilty plea, [Mendez-Quinones] must show that there is a

7

'reasonable probability that, but for counsel's unprofessional errors,' he would not have entered a guilty plea and would have insisted on going to trial." Solomon v. United States, No. 1:10-CR-376-RWS-CCH, 2012 WL 1900138, at *2 (N.D. Ga. May 2, 2012)(citation omitted), report and recommendation adopted, No. 1:10-CR-0376-RWS, 2012 WL 1900136 (N.D. Ga. May 24, 2012).

While the Court finds that Mendez-Quinones has not waived his ineffective assistance of counsel argument as it relates to his decision to plead guilty and that his claim is timely, his claim nevertheless fails on the merits. Mendez-Quinones has not shown that counsel's not investigating or suggesting an entrapment defense was unreasonable or deficient performance.

"A successful entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant." Rolon v. United States, No. 09-20710-CR, 2015 WL 13898763, at *15 (S.D. Fla. June 15, 2015)(citing Brown v. United States, 43 F.3d 618, 623 (11th Cir. 1995)), report and recommendation adopted, No. 09-20710-CR, 2015 WL 13898764 (S.D. Fla. Aug. 31, 2015). "In order to show government inducement, the defendant must show more than that the agent simply sought

out or initiated contact with the defendant and proposed an illicit transaction." Id. "Rather, the defendant must show that 'opportunity plus something like excessive pressure or manipulation of a non-criminal motive.'" Id. (quoting Brown, 43 F.3d at 623). "Without some element of 'excessive pressure or manipulation,' there is no government inducement, and thus no entrapment." Id. (citation omitted).

"As entrapment is an affirmative defense, the defendant bears the initial burden of producing evidence that is sufficient to raise a jury issue on the question of whether the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it." Id. at *16 (citation omitted). "Only if the defendant provides such evidence does the burden then shift to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the offense." Id.

As counsel explains in his affidavit, "from a legal perspective, there was no evidence to support unlawful inducement or enticement since the controlled phone call/messages with [] Mendez-Quinones did not rise to that level." (Civ. Doc. # 6-1 at 1). In short, counsel did not pursue the defense of entrapment because "there was no evidence or a good faith basis to support entrapment as a

defense." (Id.). Indeed, it appears that an entrapment defense would not be viable given the evidence of Mendez-Quinones' prior drug distribution with Johnson and his willingness to meet with Johnson to accept the cocaine.

As stated in the government's factual basis, to which Mendez-Quinones stipulated in relevant part under oath, Mendez-Quinones was the supplier of the kilogram of cocaine found at Johnson's home, which was why Johnson called Mendez-Quinones about returning the cocaine to Mendez-Quinones. (Crim. Doc. # 133 at 21). Additionally, during a recorded call with Johnson, Mendez-Quinones confirmed to Johnson that the kilogram of cocaine at issue was the same type of cocaine that Mendez-Quinones had previously supplied to Johnson. (Id.). True, Mendez-Quinones' counsel specified that Mendez-Quinones was not always the actual distributor of Johnson's cocaine, but sometimes was merely a facilitator of sales of cocaine to Johnson. (Id. at 23). Nevertheless, Mendez-Quinones never challenged that he was involved in prior cocaine transactions with Johnson before the crimes in this case. (Id.). Although Johnson initiated the phone call with Mendez-Quinones at the government's behest, there is no evidence of excessive pressure or manipulation placed on Mendez-Quinones in the call or transaction at issue.

Thus, Mendez-Quinones was not unlawfully induced, and he was predisposed to engage in the criminal activity with which he was charged. See Solomon v. United States, No. 1:10-CR-376-RWS-CCH, 2012 WL 1900138, at *3 (N.D. Ga. May 2, 2012)("[T]he reason the undercover agents approached Movant is because they previously had observed Movant engaging in the same illicit activity on several other occasions. Moreover, when the undercover agents first approached Movant to protect them during their drug deals, Movant volunteered a price that he would accept for his protection, and negotiated down his fee when the agents did not want to pay that price. Finally, when he was contacted by an undercover agent prior to each deal, on all four occasions Movant immediately agreed to participate. Movant, therefore, also has failed to demonstrate he was not predisposed to engage in such criminal activity." (citations omitted)), report and recommendation adopted, No. 1:10-CR-0376-RWS, 2012 WL 1900136 (N.D. Ga. May 24, 2012). Thus, counsel was not ineffective for not suggesting or pursuing an entrapment defense, which would lack merit in this case. See Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990)("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."); see also Brownlee, 306 F.3d at 1060 ("[C]ounsel

need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." (citation omitted)).

Additionally, as the facts would not support an entrapment defense, Mendez-Quinones cannot establish that he was prejudiced by the failure to investigate the entrapment defense. See Solomon, 2012 WL 1900138, at *4 ("Because the facts do not support an entrapment defense, Movant cannot demonstrate that he was prejudiced by any failure by counsel to investigate such a defense — i.e., that there is a reasonable probability that, but for counsel's failure to investigate an entrapment defense, Movant would not have pleaded guilty and would have insisted in going to trial. As such, Movant's claim for ineffective assistance of counsel, and that his plea was involuntary as a result, must fail."). Therefore, Mendez-Quinones's Section 2255 Motion is denied.

Mendez-Quinones' Motion for Summary Judgment is likewise denied. Mendez-Quinones' affidavits (Civ. Doc. # 2-1; Civ. Doc. # 7-1) do not support that summary judgment should be entered in his favor on his claim of ineffective assistance of counsel because they attempt to contradict Mendez-

Quinones' previous statements under oath at his change of plea hearing. See Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014)("[B]ecause Winthrop-Redin made statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.'" (citation omitted)); see also Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007)("There is a strong presumption that statements made during the plea colloquy are true. Consequently, a defendant bears a heavy burden to show that his statements under oath were false." (citations omitted)).

For example, although Mendez-Quinones acknowledged under oath that the factual basis against him (to the extent not objected to by counsel) was true at his change of plea hearing (Crim. Doc. # 133 at 24), he avers in his affidavit that he "did not, at any time prior to December 17, 2018, give or sale [sic] Jeremey Johnson any cocaine." (Civ. Doc. # 7-1 at 2). He likewise avers that he "did not have anything to do with Jeremy Johnson's possession of the kilogram of cocaine" (Civ. Doc. # 2-1 at 1), in contradiction of his stipulation under oath that he had given the kilogram of cocaine to Johnson on credit. (Crim. Doc. # 133 at 20-22, 24). Mendez-Quinones has not satisfied the heavy burden of showing that his statements at his change of plea hearing were false.

13

Regardless, even if his affidavits were taken as true, Mendez-Quinones' affidavits are insufficient to suggest that an entrapment defense was viable. Indeed, at most, Mendez-Quinones avers that "If it weren't for Jeremy Johnson's repeated calls to lure me to Lowes, I would not have left my home with the intent to commit a drug trafficking offense." (Civ. Doc. # 7-1 at 2). This evidence does not support that Mendez-Quinones was unlawfully induced, such that his counsel should have raised the entrapment defense with him. See Rolon, 2015 WL 13898763, at *15 ("In order to show government inducement, the defendant must show more than that the agent simply sought out or initiated contact with the defendant and proposed an illicit transaction."). Therefore, summary judgment in Mendez-Quinones' favor is inappropriate.

In short, the record before the Court establishes that Mendez-Quinones has failed to prove his claim of ineffective assistance of counsel.

### III. **Evidentiary Hearing**

As the Court was able to readily determine that the claim lacks merit, no evidentiary hearing is required. See 28 U.S.C. § 2255(b) (stating that an evidentiary hearing is not necessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no

14

relief"); see also Hernandez v. United States, 778 F.3d 1230, 1232-33 (11th Cir. 2015)("To establish that he is entitled to an evidentiary hearing, Hernandez had to allege facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance.").

## IV. Certificate of Appealability and Leave to Appeal In Forma Pauperis Denied

The Court declines to issue a certificate of appealability because Mendez-Quinones has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Mendez-Quinones to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. See 28 U.S.C. § 1915(a)(3). Mendez-Quinones shall be required to pay the full amount of the appellate filing fee pursuant to Section 1915(b)(1) and (2).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Algenis Mendez-Quinones' pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 150) is **DENIED**. His Motion for Summary Judgment (Civ. Doc. # 7) is **DENIED**. The Clerk is directed to enter

judgment for the United States of America and to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>12th</u> day of May, 2021.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE